UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR PADILLA,<br><br>                Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | Case No. 17-cv-01182-BAS-AHG<br><br>**ORDER GRANTING MOTION FOR PARTIAL FINDINGS AND JUDGMENT**<br><br>**(ECF No. 151)** |

Defendant moves pursuant to Federal Rule of Civil Procedure 52(c) for judgment on partial findings. (ECF No. 151.) Plaintiff opposes, and Defendant replies. (ECF Nos. 163, 164.) For the reasons stated below, the Court **GRANTS** the Motion.

## I.    STANDARD

Pursuant to Rule 52(c), during a nonjury trial, "the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). At the close of Plaintiff's evidence, Defendant moved pursuant to Rule 52(c) for judgment, arguing that Plaintiff had failed to establish causation of his injury. The Court agrees.

## II.    STATEMENT OF FACTS

Plaintiff Arthur Padilla has a history of medical problems. After a heart attack in 2010, he had quadruple bypass surgery. He also was diagnosed with Bell's palsy in 2011, and in 2012 he had to step down from his job because of his health problems. In 2014, he

was hospitalized with chest pains and underwent an angioplasty. Doctors unsuccessfully attempted to insert stents. Mr. Padilla was prescribed Lisinopril for high blood pressure and Humira for eczema. Mr. Padilla also suffers from sleep apnea.

In October 2014, Mr. Padilla complained to his cardiologist Dr. Bobak Salami that he had a chronic cough. Dr. Salami recommended Mr. Padilla discontinue Lisinopril. When Mr. Padilla discontinued the medication, he claims his cough went away. However, two months later, in December 2014, he again complained to his primary care doctor, Dr. Carlos Quiros, about a chronic cough that had persisted for three months. Dr. Quiros prescribed an antibiotic known as "Z-Pak" and the cough once again went away. At this doctor's appointment in December 2014, Mr. Padilla also said he had daytime fatigue, sleep apnea, and abdominal cramping, and Dr. Quiros discussed with Mr. Padilla the fact that he was overweight. In 2014, Mr. Padilla was also under mental stress from work (problems with a coworker) and finances (his wife had lost her job and his daughter had started college).

Plaintiff works for NAPA Auto Parts in Building 3122, located at 3341 Norman Scott Road, San Diego, California. Defendant U.S. Navy owns this building. Individuals from the U.S. Navy Exchange notify Plaintiff what auto parts they need, and Plaintiff, as a representative of NAPA Auto Parts, makes sure the parts are ordered. However, Plaintiff does not work for the Navy.

On February 6, 2015, renovation work began on portions of Building 3122. Before the renovations, Alex Hernandez met with the workers in Building 3122, including Mr. Padilla, and asked whether they needed to be relocated during the renovations. They all indicated they could continue working in the area despite the renovations.

During the renovations, drywall and paneling was removed and other demolition work took place. The renovations at Building 3122 were completed around March 23, 2015. During the demolition work, Mr. Padilla's work space became dusty.

Before these renovations took place, the building would leak in some areas when it rained. At some point during the renovations, a Navy Facilities worker pointed out a pile

of debris outside the building to supervisor Colin O'Rourke and said he thought there was some mold in the pile. When the workers removed the wood paneling and dry wall, Mr. Padilla and Lawrence Blackmon saw stains on the dry wall that they thought looked like mold. However, although Mr. Padilla said he thought he saw mold on the wall, he was not troubled enough to point out this mold, report it, or complain about it to anyone who worked for the Navy. He also never complained to anyone at the Navy about any other work conditions or asked to be relocated during the renovations. Further, Mr. Hernandez and another coworker, Enrique Zapata—who admittedly testified that he had no idea what mold looked like— both identified some of those same wall stains as grease. Other than the above, there is no evidence that there was mold in the building. No one tested the building or the air quality in the building to determine if there was mold in the building or in the air.

Safety construction expert Peter Lupo testified that the U.S. Navy's practices during the remodel did not comply with prudent construction practices because it should have limited access to construction workers only. Mr. Lupo also testified that, if it was possible that mold existed in the building, an industrial hygienist should have inspected it to make sure the building was safe. However, Mr. Lupo has never visited Building 3122 and has no particular expertise in the area of mold.

On November 11, 2015, about eight months after the renovations had been completed, Mr. Padilla returned to Dr. Quiros complaining again of a cough that he said had been bothering him since October. This was the first time since the renovations that Mr. Padilla had seen a doctor complaining of the cough.

After an abnormal chest x-ray, and noting that the cough proved resistant to antibiotics, Dr. Quiros referred Mr. Padilla to a pulmonologist, Dr. Julian Lichter. Dr. Lichter eventually referred Mr. Padilla to a thoracic surgeon for a lung biopsy. Mr. Padilla still suffers discomfort at the incision site of his lung biopsy.

Based on this lung biopsy, a CAT scan, blood tests, and bronchioalveolar lavage, Dr. Lichter concluded that Mr. Padilla has interstitial lung disease. He opined that the most

likely diagnosis was non-specific interstitial pneumonitis ("NSIP") of the cellular type, although he could not rule out chronic hypersensitivity pneumonitis ("CHP") caused by an exposure to an antigen such as mold.

Mr. Padilla's blood test showed the presence of precipitates of aspergillus flavus, a fungal organism that is ubiquitous to the environment. This positive test simply indicated that Mr. Padilla had been exposed to the mold at some point in his life and had developed an antibody to it. However, NSIP tends to affect the lower zones of the lung, which proved to be true with Mr. Padilla, whereas CHP tends to affect the upper zones of the lungs. For this reason, Dr. Lichter concluded that Mr. Padilla's interstitial lung disease was likely NSIP. However, there is significant overlap between the two conditions and many potential causes for both. Ultimately, Dr. Lichter concluded Mr. Padilla's lung problems are most likely idiopathic, or, in other words, of unknown origin or even occurring spontaneously.

Dr. Lichter prescribed Plaintiff prednisone, which seemed to help with the cough but caused side effects. Side effects for prednisone use include insomnia and mood changes. Dr. Lichter has attempted to reduce the levels of prednisone, in part by prescribing azathioprine.

Mr. Padilla complains that his energy level is now low and that he gets winded taking walks. Mr. Padilla explains that he is not as physically active as he used to be—the symptoms come and go. However, the medications have successfully reduced the symptoms. Mr. Padilla has also been exhibiting symptoms of depression. He ruminates on his medical difficulties, has memory issues, and is no longer physically intimate with his wife.

As a result of his medical difficulties, he has had to pay for his various prescriptions and has lost wages. He also faces potential future medical costs because of his interstitial lung disease.

## III. CONCLUSIONS OF LAW

California law applies because Plaintiff claims he was injured in California. *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995). Under California law, the elements of negligence are: (1) defendant owed plaintiff a duty—that is, defendant had an "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks"; (2) defendant breached that duty; (3) the breach proximately caused plaintiff's damages; and (4) plaintiff was damaged. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). Defendant moves for partial judgment on the third element, that of causation.

"To prove causation, the plaintiff must show . . . that the defendant's breach of duty was a cause in fact of his . . . injury." *Union Pac. R.R. Co. v. Ameron Pole Prod., LLC*, 43 Cal. App. 5th 974, 980 (2019) (citation omitted). "California has adopted the 'substantial factor' test for cause in fact determinations." *Id.* at 981 (citation omitted). "In other words, [the] plaintiff must show some substantial link or nexus between omission and injury." *Id.* (quotation omitted). Under the substantial factor test, "a defendant's conduct is a cause of plaintiff's injury if: (1) the plaintiff would not have suffered the injury but for the defendant's conduct, or (2) the defendant's conduct was one of multiple causes sufficient to cause the alleged harm." *Id.* If the injury or illness "would have happened anyway, whether the defendant was negligent or not, then [the] negligence was not a cause in fact" of plaintiff's injury or illness. *Id.* at 983–84 (citation omitted).

"Ordinarily, a plaintiff may establish proximate cause without the testimony of an expert by providing evidence that indicates the defendant's conduct was a substantial factor in producing plaintiff's damages." *Miranda v. Bomel Constr. Co.*, 187 Cal. App. 4th 1326, 1336 (2010). "However, 'the law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony.'" *Id.* (quoting *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 402 (1985)). While there can be many causes of an illness, "[a] possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." *Id.* Mere possibility alone is insufficient. *Id.*

Plaintiff has not demonstrated that his lung problems were caused by the renovations at Building 3122. Although there is a suggestion that there was water leaking into the building and witnesses said they thought they saw mold, there is no definitive proof that there was mold at the location. Mr. Padilla and Mr. Blackmon's testimony that they thought they saw mold on the walls is insufficient to establish the existence of mold in the building that caused Mr. Padilla's respiratory difficulties.

Although Mr. Padilla's treating physician, Dr. Lichter, cannot rule out mold as a cause of the lung disease, he finds the lung problems are most likely idiopathic. To the extent Plaintiff's experts Dr. Ronald Simon or Dr. James Vevaina testified otherwise, the Court finds Dr. Lichter's testimony more persuasive in part because Dr. Lichter was Mr. Padilla's treating physician. *Cf. Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (holding, in the social security disability context, that the opinions of examining physicians are generally "afforded more weight than those of non-examining physicians and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians"); *Perryman v. Provident Life and Accident Ins. Co.*, 690 F. Supp. 2d 917, 945 (D. Ariz. 2010) (holding that in the ERISA context, although the Court is not required to accord special deference to the opinions of a treating physician, "the court may nevertheless give significant weight to the opinions of [a plaintiff's] treating physicians to the extent they merit it"). In this case, Dr. Lichter had been treating Mr. Padilla for some time and had seen him regularly. He based his conclusion that Mr. Padilla had NSIP on the lung biopsy, the CAT-scan, blood tests, and bronchioalveolar lavage. The Court found particularly persuasive his explanation that NSIP tends to affect the lower zones of the lungs—which was true in Mr. Padilla's case—whereas CHP tends to affect the upper zones of the lungs.

Additionally, Dr. Vevaina largely based his opinion on the statements given to him by Mr. Padilla alone. And Dr. Simon failed to consider events and medical conditions from which Mr. Padilla had suffered before 2015. Neither has seen Mr. Padilla as

consistently as Dr. Lichter has. Neither was searching for explanations to treat Mr. Padilla. And both were missing key pieces of Mr. Padilla's medical background.

Plaintiff has simply drawn an insufficient link between the lung disease and the building renovations. Plaintiff has failed to sufficiently demonstrate that he would not have contracted his illness anyway, whether or not he had worked in Building 3122. And he has failed to prove that it is more than merely possible that the building renovations caused his interstitial lung disease.

Furthermore, although Peter Lupo testified the Navy's practices during the remodel did not comply with prudent construction practices because they should have limited access to Building 3122 to construction workers only and relocated all others, there is insufficient evidence that this failure to limit access caused the medical problems Mr. Padilla has experienced.

## IV. CONCLUSION

Because Plaintiff has failed to establish causation, his claim for negligence cannot stand. Accordingly, the Court **GRANTS** Defendant's Motion. (ECF No. 151.) Judgment is entered in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

DATED: March 24, 2021

Hon. Cynthia Bashant
United States District Judge